THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:00-cr-00047-MR-WCM-2

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ERIC ALFONZO HARTGROVE, )<br>)<br>Defendant. )<br>_____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's "Motion under 18 U.S.C. 3582(c)(1)(A) to Modify His Sentence" [Doc. 188]; the Government's Response to the Defendant's Motion to Modify Sentence [Doc. 191]; and the Government's Motion to Seal [Doc. 192].

**I.  BACKGROUND**

In August 2000, the Defendant Eric Alfonzo Hartgrove pled guilty to various racketeering, drug, and firearm offenses. [Docs. 51, 54]. In March 2001, the Court[1] sentenced him to a total term of 300 months of

---

[1] The Honorable Lacy H. Thornburg, United States District Judge, presiding. Upon Judge Thornburg's retirement in 2009, this matter was reassigned to the undersigned.

imprisonment. [Doc. 124]. The Defendant is currently housed at FCI Williamsburg, and his projected release date is December 26, 2022.[2]

The Defendant now seeks a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the ongoing COVID-19 pandemic. [Doc. 188]. Specifically, the Defendant argues that his underlying health conditions place him at a higher risk for severe illness from COVID-19, and that his particular vulnerability to the illness is an extraordinary and compelling reason for an immediate sentence reduction to time served or a release to home confinement. [Id.]. The Court ordered the Government to respond to the Defendant's motion. [Text-Only Order entered Dec. 8, 2020]. The Government filed its response on January 5, 2021. [Doc. 191]. The Defendant did not file a reply.

## II. DISCUSSION

### A. Motion for Compassionate Release

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling

---

[2] See https://www.bop.gov/inmateloc/ (last visited Jan. 25, 2021).

reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government concedes that the Defendant has exhausted the necessary administrative remedies. Accordingly, the Court will proceed to address the merits of the Defendant's motion.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. As is relevant here, the application note to § 1B1.13 specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic

3

solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13

does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, the Court recognized, that the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

Here, the Defendant claims that he has three conditions—acute bronchitis, leukopenia (low white blood cell count), and hypertension—that place him at greater risk than the average prisoner for severe illness from COVID-19. The BOP medical records, however, indicate that the Defendant's acute bronchitis resolved in 2018. [Doc. 189 at 3]. Similarly, the Defendant's leukopenia does not appear to be chronic. The Defendant refused follow-up investigation into his white blood cell count in 2018. [Id. at 6]. Blood tests performed in May 2020 indicated that the Defendant's white blood cell count was only slightly below normal, and BOP medical staff did not express concern or order follow-up testing. [Id. at 8]. In any event,

neither of these conditions is identified by the CDC as a COVID-19 risk factor.[3]

As for the Defendant's hypertension, the CDC has cautioned that people with hypertension might be at an increased risk for severe illness.[4] However, the Defendant's high blood pressure appears to be well-controlled in the prison environment [see Doc. 192-1: Medical Records], and he has no other ailments that place him at any higher risk of an adverse outcome from COVID-19 than any other member of the general public.

As for the risk posed to the Defendant by the COVID-19 pandemic, the Court notes that the Federal Bureau of Prisons ("BOP") has taken significant measures to protect the health of its inmates. See United States v. Johnson, No. 1:19-cr-00020-MR-WCM, 2020 WL 7646809, at *2-3 (W.D.N.C. Dec. 23, 2020) (Reidinger, C.J.). Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders. Given the BOP's efforts, the

---

[3] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed January 25, 2021).

[4] See id.

6

fact that the Defendant faces a potential risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief he requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

For all these reasons, the Court concludes that the Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(A)(1)(i).

Even if the Defendant could establish an extraordinary and compelling reason for his release, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the Defendant's offenses were extremely serious. He and his co-defendants robbed two convenience stores at gunpoint and attempted to rob a third. [Doc. 122: PSR at 5-6]. He also set up and then robbed a drug dealer at a motel, stealing $2,000 and three eight-balls of crack cocaine. [Id.

at 5]. The Defendant committed these robberies despite having previously served approximately seven years in prison for an earlier armed robbery. [Id. at 10]. Within five months of being released for that offense, he began committing the crimes for which he is currently incarcerated. [Id.].

The Defendant also has a significant disciplinary history in the Bureau of Prisons. He has been disciplined approximately thirteen times for fighting or assaults, and at least four times for possessing a dangerous weapon. [Doc. 191-1]. The Defendant has also been cited numerous times for disobeying orders and committing sexual acts. [Id.].

For all these reasons, the Court concludes that the need for the sentence to reflect the true extent and seriousness of the Defendant's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from the Defendant's further crimes militate against a sentence reduction in this case.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's motion for compassionate release is denied.

**B.     Motion to Seal**

The Government moves the Court for leave to file under permanent seal the BOP medical records [Doc. 192-1] filed in support of its Response to the Defendant's motion for compassionate release. [Doc. 192].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to the Government's motion. The Government filed its motion on January 5, 2021, and such motion has been accessible to the public through the Court's electronic case filing system since that time. Further, the Government has demonstrated that the subject medical records contain sensitive information concerning the Defendant and that the public's right of access to such information is substantially outweighed by the Defendant's competing interest in protecting the details of such information. See United States v. Harris, 890 F.3d 480, 492 (4th Cir. 2018). Finally, having

considered less drastic alternatives to sealing the documents, the Court concludes that sealing of these medical records is necessary to protect the Defendant's privacy interests.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion under 18 U.S.C. 3582(c)(1)(A) to Modify His Sentence" [Doc. 188] is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion to Seal [Doc. 192] is **GRANTED**, and the medical records submitted in support of the Government's Response [Doc. 192-1] shall be filed under seal and shall remain under seal until further Order of the Court.

**IT IS SO ORDERED.**

Signed: February 1, 2021

Martin Reidinger
Chief United States District Judge